UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) Docket No. 2:18-cr-49 |
| | ) |
| ANGELO PETER EFTHIMIATOS, | ) |
| | ) |
| *Defendant*. | ) |

## MOTION TO DISMISS INDICTMENT WITH PREJUDICE FOR VIOLATION OF THE SPEEDY TRIAL ACT AND REQUEST FOR HEARING

Angelo Peter Efthimiatos, through his attorney, Craig S. Nolan, Esq., respectfully moves this Court to dismiss the government's indictment with prejudice pursuant to 18 U.S.C. §§ 3161 and 3162, commonly known as the Speedy Trial Act of 1974 (the "Act"), and Fed. R. Crim. P. 48(b)(3). As articulated below, the October 3, 2018 jury selection did not constitute the commencement of trial under the Act because its scheduling more than two months prior to the swearing of the jury, the giving of opening statements and the admission of evidence constituted a "start-and-stop plan" to impermissibly avoid the Act's 70-day clock. Mr. Efthimiatos requests a hearing on this Motion.

## BACKGROUND

The Act provides that if a plea of not guilty is entered, a trial "shall commence" within seventy days of the last to occur among (i) the filing of an indictment or information, or (ii) from the date the defendant first appears before a judicial officer of the court in which his charge is pending. 18 U.S.C. § 3161(c). This 70-day window is commonly referred to as the speedy trial clock. "If that deadline is not met, the Act provides that the indictment 'shall be dismissed on motion of the defendant[,]'" with or without prejudice. *United States v. Bert*, 814 F.3d 70, 78

(2d Cir. 2016) (quoting 18 U.S.C. § 3162(a)(2)); *United States v. Wilson*, 11 F.3d 346, 352 (2d Cir. 1993). Calculating the Act's clock, for purposes of determining whether a violation has occurred, is "a simple matter of producing a calendar and showing that more than seventy days have passed since the indictment (or first appearance) and trial has yet to begin." *United States v. Jenkins*, 92 F.3d 430, 438 (6th Cir. 1996). The Act also contains an exhaustive list of events that exclude time or are excludable from the speedy trial clock. For example, delays stemming from pretrial motions are excluded (with some limitations) pursuant to § 3161(h)(1)(F) of the Act.

The table produced below details the various events and date ranges involved in computing this matter's speedy trial clock:

| **Event:** | **Date Range:** | **Number of Days Counted Against Speedy Trial Clock (running total in parentheses):** | **Number of Days Excluded from Speedy Trial Clock:** |
| --- | --- | --- | --- |
| Day following indictment up to Arraignment[1] | 04/27/18 – 05/03/18 | 7 (7 total) | 0 |
| Arraignment through initial pretrial motions deadline | 05/04/18 – 07/11/18 | 0 (7 total) | 69 (Interests of justice exclusion) |
| Day following pretrial motions deadline up to Defendant's motion for Reconsideration re Order of Detention | 07/12/18 – 07/26/18 | 15 (22 total) | 0 |
| Defendant's motion for Reconsideration re Order of Detention through Order denying said motion for Reconsideration of Detention | 07/27/13 – 07/31/18 | 0 (22 total) | 5 |

---

[1] Mr. Efthimiatos first appeared before a judicial officer in this District on April 10, 2018 after being arrested and charged by Complaint.

| | | | |
|---|---|---|---|
| Day following motion order <u>up to</u> Defendant's Unopposed motion to continue trial date | 08/01/18 – 08/14/18 | 14 (36 total) | 0 |
| Defendant's Unopposed motion to continue trial date <u>through</u> Order granting Defendant's Unopposed motion to continue trial date | 08/15/18 – 08/17/18 | 0 (36 total) | 3 |
| Day following motion order <u>up to</u> attorney Barth's motion to withdraw as attorney | 08/18/18 – 08/20/18 | 3 (39 total) | 0 |
| Attorney Barth's motion to withdraw as attorney <u>through</u> Order granting attorney Barth's motion to withdraw as attorney | 08/21/18 – 09/04/18 | 0 (39 total) | 15 |
| Day following motion order <u>through</u> jury draw date | 09/05/18 – 10/03/18 | 29 (68 total) | 0 |
| Day following jury draw date <u>up to</u> stipulated motion to file under seal transcript | 10/04/18 – 10/16/18 | 13 (81 total) | 0 |
| Stipulated motion to file under seal transcript & Order granting stipulated motion | 10/17/18 | 0 (81 total) | 1 |
| Day following stipulated motion order <u>up to</u> motion for reconsideration of order of detention | 10/18/18 – 11/14/18 | 28 (109 total) | 0 |
| | **Total Speedy Trial Clock Days:** | **109** | |

## ARGUMENT

"The Speedy Trial Act was designed to effectuate the interests of society in general and of the defendant in particular by ensuring that our courts mete out speedy justice." *United States v. Didier,* 542 F.2d 1182, 1188 & n.7 (2d Cir. 1976). "The Act controls the conduct of the parties and the court itself during criminal pretrial proceedings. Not only must the court police the behavior of the prosecutor and the defense counsel, it must also police itself." *United States v. Stayton*, 791 F.2d 17, 20 (2d Cir. 1986) (quoting *United States v. Pringle*, 751 F.2d 419, 429 (1st Cir. 1984)).

Although the Act does not expressly define the term "commence," the Second Circuit, together with other circuits, has held that "[t]rial normally 'commences' for purposes of the Act with the *voir dire* of the jury." *United States v. Fox*, 788 F.2d 905, 908 (2d Cir. 1986); *Stayton*, 791 F.2d at 19; *United States v. Brown*, 819 F.3d 800, 810 (6th Cir. 2016); *United States v. Gonzalez*, 671 F.2d 441, 443 (11th Cir. 1982); *Gov't of Virgin Islands v. Duberry*, 923 F.2d 317, 320 (3d Cir. 1991). Nevertheless, circuit courts, including the Second Circuit, have consistently identified and condemned so-called start-and-stop plans, i.e., "attempts by the district courts to 'evade the spirit of the Act by conducting *voir dire* within the statutory time limits and then ordering a prolonged recess with the intent to pay mere 'lip service' to the Act's requirements." *Brown*, 819 F.3d at 810 (citing *United States v. Scaife*, 749 F.2d 338, 343 (6th Cir. 1984); *United States v. Richmond*, 735 F.2d 208, 211 (6th Cir. 1984)); *see Stayton*, 791 F.2d at 19 ("[A]lthough *voir dire* marks the technical commencement of the trial, the strictures of the Speedy Trial Act are not fully satisfied by mere technical commencement. In the absence of a request by either side, or of any apparent justification, . . . we could not accept the technical commencement of the trial, *voir dire*, as satisfying the requirements of the act.") (citing *Fox*, 788 F.2d at 909). When

district courts engage in such machinations, circuit courts no longer look to *voir dire* as the "commencement" date of trial. *See Brown*, 819 F.3d at 815; *Stayton*, 791 F.2d at 19-21.

In *United States v. Andrews*, 790 F.2d 803 (10th Cir. 1986), the Tenth Circuit held that start-and-stop maneuvering resulting in a two-and-one-half-month delay between jury draw and the first day of testimony violated the Act. *Id.* at 802. The court acknowledged the general rule that the speedy trial clock stops when jury draw is conducted, and then invoked *Gonzalez* for its oft-cited admonishment that a district court may not "evade the Act's spirit by commencing *voir dire* within the prescribed limits and then taking a prolonged recess before the jury is sworn and testimony is begun." *Andrews*, 790 F.2d at 808 (quoting *Gonzalez*, 671 F.2d at 444); *Stayton*, 791 F.2d at 20 (quoting same passage from *Gonzalez*). The district judge in *Andrews* proclaimed that the delay was a result of "a heavy criminal docket, several legal holidays, and his attendance at a judicial seminar, which he mistakenly believed was mandatory." *Id.* at 808. The Tenth Circuit was not persuaded by these arguments and held the delay to constitute a violation of the Act. *Id.* (explaining that "[n]either a congested court calendar nor the press of a judge's other business can excuse delay under the Act."); *see Stayton*, 791 F.2d at 20 ("We recognize that the Western District of New York currently faces an overloaded docket, but 'the court's crowded calendar [is not a] sufficient reason for delay,' *Didier*, 542 F.2d at 1188, beyond what may be authorized by the [Act]."). The Tenth Circuit also emphasized that this start-and-stop plan was particularly oppressive of the defendant's right to a speedy trial in light of his incarceration and inability to post bail. *Id.*; *see United States v. Mancuso*, 302 F. Supp. 2d 23, 28 (E.D.N.Y. 2004) ("[I]nordinate delay between public charge and trial, . . . wholly aside from possible prejudice to a defense on the merits, may 'seriously interfere with the defendant's liberty . . . may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy,

and create anxiety in him, his family and his friends.'" (quoting *Barker v. Wingo*, 407 U.S. 514, 537 (1972)).

In the instant matter, the Court scheduled the jury draw for October 3, 2018—Day 68 on the speedy trial clock—because Mr. Efthimiatos declined to seek another exclusion of time under the Act. During the September 4, 2018 hearing on Attorney Barth's motion to withdraw, the Court understood that Mr. Efthimiatos desired to get to trial quickly and within the time limits of the Act:

> THE COURT: Miss Cowles, I am going to grant Mr. Efthimiatos new counsel, and we are going to get this going as quickly as possible in light of the potential penalties in this case. I don't want him incarcerated pretrial any longer than necessary, and so you should anticipate that as well. We have, I believe, 31 days on the speedy trial clock, so we will be setting it promptly. Some of the dates that I was looking at is a jury draw of October 2nd, and we'll consult more, but I have got to get new counsel on board first. All right. Anything else at this time?
>
> MR. BARTH: Your Honor, I had filed motions to toll the speedy trial clock in conjunction with a request to move the trial date from September 11th. Since that time, Mr. Efthimiatos has told me he does not want the speedy trial clock tolled, and I just asked him now to confirm that, and he confirmed it. So I thought it important that the Court know that.
>
> THE COURT: So what I will do is I will grant your motion to move it from September 11th, because it's not going to happen now. That will take that off the speedy trial clock. I am going to grant your motion to withdraw as of today. New counsel will come on board. So, Mr. Efthimiatos, any time a motion is filed, it tolls the clock. So if you ask for new counsel or your new counsel says, "I need more time to get up to speed" or "I want to file pretrial motions," every time that happens, the clock is tolled. That's just automatic. There's no getting away from it. But by granting these motions today, at least it won't be any further time on the clock. Does that work for everyone?

Ex. A (September 4, 2018 Motion Hearing Transcript) at 3-4.

Despite its understanding that Mr. Efthimiatos was explicitly invoking his rights under the Act—which is self-executing and therefore need not be invoked by a defendant—the Court set the actual trial date, i.e., the swearing of the jury, the giving of opening statements, and the

6

admission of evidence, for December 5, 2018, 63 days after the jury draw. On September 4, 2018, after granting Attorney Barth's motion to withdraw, the Court inquired of undersigned counsel whether he could assume the defense of Mr. Efthimiatos. *See* Ex. B. The Court was concerned about the speedy trial clock and proposed a jury draw date of October 2, 2018, to which undersigned counsel replied that he could be available for jury draw on October 1, 3 or 4, 2018. *See id.* After settling on October 3, 2018 as the date for the draw, the Court informed counsel for both parties that "[a]s far as potential trial dates—we'd have to look at November 26 as the trial start date. ***That's the earliest we could fit this in given another trial in October and the judge's schedule.***" *Id.* (emphasis added). Undersigned counsel responded that he was scheduled for trial in the Northern District of New York during November 26-30, 2018, but could be available the following week beginning on December 5, 2018 for a trial the government and he estimated would consume two days. *See id.* The Court then scheduled the trial for December 5-7, 2018. *See id.*

The scheduling of trial for a date more than two months following *voir dire* cannot, as noted above, be justified based on the Court's docket or the schedule of a particular judge.[2] *See Andrews*, 790 F.2d at 808; *Stayton*, 791 F.2d at 20. And no other justification for the delay between *voir dire* and trial has been asserted in this matter, which involves a single charge based on uncomplicated allegations for which Mr. Efthimiatos has been detained–and continues to be detained–pending trial for nearly eight months. Consequently, no doubt can exist that the jury

---

[2] Mr. Efthimiatos acknowledges that the trial schedule of then-newly appointed defense counsel resulted in an additional delay of nine days from November 26 to December 5, 2018, but those nine days come after a Court scheduling delay already repugnant to the Act.

7

draw was scheduled two months prior to the actual trial in order to pay "lip service" to the Act—a start-and-stop plan not permitted under the Act.[3]

When a violation of the Act has been found, the defendant's remedy is dismissal of the indictment or information. "In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice. 18 U.S.C. § 3162(a)(2). "In addition to these statutory factors, the Supreme Court has indicated that prejudice to the defendant should also be considered." *United States v. Wilson,* 11 F.3d 346, 352 (2d Cir. 1993) (citing *United States v. Taylor*, 487 U.S. 326, 334, (1988)); *United States v. Bert*, 814 F.3d 70, 79 (2d Cir. 2016).

A. Seriousness of the Offense

Mr. Efthimiatos' indictment charges him with knowingly and willfully serving and attempting to serve in any capacity as an airman without an airman's certificate authorizing him to serve in that capacity, in violation of 49 U.S.C. § 46306(b)(7). If Mr. Efthimiatos were to be convicted at trial, the advisory guidelines suggest a sentencing range of only 2 to 8 months for an offense that carries a mere three-year maximum. Mr. Efthimiatos previously held an airman's certificate that was revoked by the Federal Aviation Administration ("FAA") as a punitive measure following Mr. Efthimiatos' 2013 conviction for narcotics trafficking in the United States District Court for the Southern District of Iowa. No allegations exist that Mr. Efthimiatos was not qualified to pilot a plane or failed to do so safely. This case does not involve drug-trafficking, firearm possession, wire fraud, money laundering, or any other charge previously

---

[3] Although a defendant waives his rights under the Act by failing to move to dismiss prior to the commencement of trial, such motion is properly and timely filed after *voir dire* in cases involving impermissible start-and-stop plans. *See United States v. Sherer*, 770 F.3d 407, 411 (6th Cit. 2014).

labeled as "serious" for purposes of a Speedy Trial Act analysis. *See, e.g., United States v. Smith*, 705 F.3d 1268, 1273(10th Cir. 2013); *United States v. Williams*, 576 F.3d 1149, 1258 (10th Cir. 2009). Nor do the facts suggest any aggravating circumstances that would heighten the seriousness of the offense, such as violence or safety concerns. Moreover, Mr. Efthimiatos faces revocation of supervised release and imprisonment for up to two years in the Southern District of Iowa for the very same alleged conduct that underlies the indictment in this matter, ensuring that he will face consequences upon the government's proof by a mere preponderance of the evidence that he piloted a plane without an airman's certificate or left this District for that flight without permission of his probation officer. In short, on the spectrum of "seriousness" this indictment alleges an offense that unequivocally pitches towards the "less serious" pole. Therefore, this first factor weighs in favor of dismissal with prejudice.

### B. Facts and Circumstances Leading to Delay

The second factor tasks the court with scrutinizing the circumstances that gave rise to the Act's violation:

> This aspect of the test focuses on the culpability of the delay-producing conduct. The pendulum swings in two directions: sometimes the defendant may be to blame; other times, the government. . . . Where, as here, the delay-causing conduct is attributable to the sovereign (the court or the prosecutor), it inveighs progressively in favor of the accused. As we see it, the appropriateness of barring reprosecution increases in relatively direct proportion to the degree of culpability which attaches. Accordingly, delay which results . . . from intentional noncompliance with the Act . . . weighs heavily in favor of dismissal with prejudice.

*United States v. Hastings*, 847 F.2d 920, 925 (1st Cir. 1988).

Here, violation of the Act is exclusively attributable to the start-and-stop plan implemented by the Court to prematurely stop the Speedy Trial Act clock. *See Bert*, 814 F.3d at 80 ("District courts must hold themselves accountable for ensuring their own compliance with the Speedy Trial Act's requirements."); *United States v. Pringle*, 751 F.2d 419, 429 (1st Cir.

9

1984) ("Not only must the court police the behavior of the prosecutor and the defense counsel, it must also police itself."). Dismissal with prejudice has been upheld in cases involving lesser transgressions, such as neglect or oversight by the court. In *United States v. Ramirez*, 973 F.2d 36, 38 (1st Cir. 1992), the First Circuit upheld the district court's dismissal with prejudice upon a finding that the "district court merely lost track of the [Act's] deadline, in the midst of attending to its many other cases." *Id.* at 39 (explaining that "[w]hen a [Speedy Trial Act] violation is caused by the court or the prosecutor, it weighs in favor of granting a dismissal with prejudice."). In light of the circumstances surrounding the violation of the Act in this matter–intentional noncompliance by the sovereign–the pendulum swings further towards Mr. Efthimiatos and in favor of dismissal with prejudice.

C. Impact of Reprosecution on the Administration of the Speedy Trial Act and
on the Administration of Justice

The administration of the Act and the administration of justice would be best served by dismissing the indictment with prejudice as this pattern is endemic (normalizing itself to such an extent that it has been designated with a name, "start-and-stop plan") and should be deterred in the future. In *Ramirez*, a case in which the Act was violated due only to clerical oversight, the district court found that "[r]reprosecution would send exactly the wrong signal to those responsible for complying with the Acts [sic] requirements and would, in all likelihood, foster in the future a cavalier regard, if not a concerted disregard, of those requirements. Justice, as visualized under the Act, will be poorly served by such a precedent." *Id*. The violation of the Speedy Trial Act present here is not an outlier, anomaly, or one-off incidental violation; start-and-stop planning is a pervasive behavior across the country that has been uniformly criticized as a violation of the Act. Such maneuvering will only repeat itself until deterred through dismissal with prejudice. Nor is this violation the result of neglect or oversight or an "isolated unwitting

violation." *United States v. Taylor*, 487 U.S. 326, 339 (1988). In situations involving a common and intentional violation of the Act, dismissal with prejudice is the most appropriate prophylactic. "The Act's purpose of expeditiously bringing criminal cases to trial would not be served by assuring those charged with this responsibility that they need not fear the more severe sanction." *Bert*, 814 F.3d at 83. Therefore, this factor also weighs in favor of dismissal with prejudice.

### D. Prejudice to Defendant

When considering this final factor, the Supreme Court has held that "[t]he length of delay, a measure of the seriousness of the speedy trial violation, in some ways is closely related to the issue of the prejudice of the defendant. The longer the delay, the greater the presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial or the restrictions on his liberty." *Taylor*, 487 U.S. at 340. Moreover, "there are actually two types of prejudice relevant to this factor: (1) trial prejudice, i.e., prejudice in the defendant's ability to mount a defense at trial; and (2) non-trial prejudice. The Supreme Court has described the latter type of prejudice as follows: Inordinate delay between public charge and trial, wholly aside from possible prejudice to a defense on the merits, may seriously interfere with the defendant's liberty, whether he is free on bail or not, and may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends. *Bert*, 814 F.3d at 82 (quoting *Taylor*, 487 at 3401-41); *see also United States v. Moss*, 217 F.3d 426, 431–32 (holding that the district court erred when it "neglected to address any non-trial prejudice suffered by [the defendant]," including the "impact [of his incarceration] on his life circumstances").

Here, the 63-day delay caused by the Court's start-and-stop plan is more than trivial. The delay has thwarted Mr. Efthimiatos' ability to effectively pursue resolution of his alleged supervised release violation pending in the Southern District of Iowa. Dismissal of this indictment without prejudice would result in greater aggravation of these efforts. Furthermore, as revealed on the docket sheet, the 63-day delay has been gainfully used by the government to develop more evidence in preparation of its case against Mr. Efthimiatos (such as the forensic examination of a cell phone resulting in the belated November 5, 2018 disclosure of an expert and expert's report). As to non-trial prejudice, Mr. Efthimiatos' detention for eight months as of the trial date, has, in all likelihood, vastly exceeded any sentence this Court would likely impose should he be convicted at trial based on an anticipated advisory guideline range of 2 to 8 months. Dismissal without prejudice would only serve to extend this period of incarceration for Mr. Efthimiatos, precisely the kind of the harm the Act seeks to rectify, and provide the government with another 70 days under the Act upon the filing of a new indictment before Mr. Efthimiatos could compel trial. This prospect alone would make dismissal without prejudice a pyrrhic victory for Mr. Efthimiatos. Finally, as repeatedly demonstrated in his challenges to detention, Mr. Efthimiatos' protracted detention has had a profoundly negative impact on his family. Because of the foregoing, particularly the fact that dismissal without prejudice would effectively result in Mr. Efthimiatos being worse off than he is currently, this factor strongly tips the scale in favor of dismissal with prejudice.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the indictment with prejudice.

Dated at Burlington, Vermont, this 21st day of November, 2018.

**ANGELO PETER EFTHIMIATOS**

By: */s/ Craig S. Nolan*
Craig S. Nolan, Esq.
SHEEHEY FURLONG & BEHM P.C.
30 Main Street, 6th Floor
P.O. Box 66
Burlington, VT 05402-0066
(802) 864-9891
cnolan@sheeheyvt.com

# **CERTIFICATE OF SERVICE**

I, Craig S. Nolan, counsel for Angelo Peter Efthimiatos, do hereby certify that on November 21, 2018, I electronically filed with the Clerk of Court the following document:

**MOTION TO DISMISS INDICTMENT WITH PREJUDICE FOR VIOLATION OF THE SPEEDY TRIAL ACT AND REQUEST FOR HEARING**

using the CM/ECF system. The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to the following NEF parties:

AUSA Eugenia A. Cowles, Esq.
AUSA Nicole P. Cate, Esq.
U.S. Attorney's Office
11 Elmwood Avenue
P.O. Box 570
Burlington, VT  05403
eugenia.cowles@usdoj.gov
nicole.cate@usdoj.gov

Dated at Burlington, Vermont this 21st day of November, 2018.

        By:    */s/ Craig S. Nolan*
              Craig S. Nolan, Esq.
              SHEEHEY FURLONG & BEHM P.C.
              30 Main Street, 6th Floor
              P.O. Box 66
              Burlington, VT  05402-0066
              (802) 864-9891
              cnolan@sheeheyvt.com