UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) Docket No. 2:18-cr-49 |
| | ) |
| ANGELO PETER EFTHIMIATOS, | ) |
| | ) |
| *Defendant*. | ) |

**MOTION *IN LIMINE* TO EXCLUDE STATEMENTS
OBTAINED IN VIOLATION OF *MIRANDA* AND REQUEST FOR HEARING**

Angelo Peter Efthimiatos, through his attorney, Craig S. Nolan, Esq., moves *in limine* to exclude (i) the custodial statements he made to federal agents on April 10, 2018, without first receiving *Miranda* warnings; and (ii) the statements made by Mr. Efthimiatos to federal agents following his assertion of his right to counsel on the morning of April 10, 2018, on the grounds that these statements were obtained in violation Mr. Efthimiatos' *Miranda* rights. In support of this Motion, Mr. Efthimiatos relies upon and incorporates the following memorandum.

**Memorandum**

I.  **Relevant Facts.**

   **A. Statements Prior to *Miranda* Warnings.**

Shortly after 12:15 AM on April 10, 2018, Drug Enforcement Administration ("DEA") investigators allegedly observed Mr. Efthimiatos exit a plane, bearing tail number N4563F, at the Rutland Southern Vermont Regional Airport. Mr. Efthimiatos then began walking toward an SUV within the secured area of the airport when the three investigators, SA Brandon Hope, SA Kevin Kadish, and TFA John McGarghan, approached Mr. Efthimiatos and introduced themselves as law enforcement. Following this prelude, the investigators questioned Mr.

Efthimiatos on an array of matters including his airman's certificate, prior arrest history, supervised release conditions, air travel, business associations, etc. Questioning continued until Mr. Efthimiatos was overwhelmed, felt ill, and requested permission to sit. Investigators pressed Mr. Efthimiatos to continue the questioning inside one of the government vehicles. Mr. Efthimiatos followed the three investigators into the vehicle. TFA McGarghan sat in the driver's seat, SA Kadish sat in the front passenger seat, and Mr. Efthimiatos sat in the back seat adjacent to SA Hope. Inside the vehicle, the agents continued to question Mr. Efthimiatos. This interrogation was recorded at least in part by the investigators using a digital recording device. At no point prior to or during the custodial interrogation of Mr. Efthimiatos while he was inside the DEA vehicle for the first time was he informed of his *Miranda* rights by any of the investigators.

    **B. Statements in SA Hope's Vehicle.**

At the insistence of SA Hope, the interrogation within the government vehicle concluded so that the parties could retrieve Mr. Efthimiatos' luggage from the plane. Investigators used this opportunity to request Mr. Efthimiatos' consent to a search of the plane. After the investigators searched the plane (finding no contraband) Mr. Efthimiatos was formally arrested and placed in TFA McGarghan's vehicle at approximately 1:30 AM for transport to Chittenden County Regional Correctional Facility. Finally, after all of this activity, Mr. Efthimiatos was read *Miranda* rights in TFA McGarghan's vehicle. Mr. Efthimiatos was then moved to SA Hope's vehicle at approximately 2:37 AM where another recorded custodial interrogation of Mr. Efthimiatos transpired. For this second custodial interrogation, SA Hope, the primary questioner from the first custodial interrogation, served as the sole interrogator. The salient dialogue from that interrogation, for purposes of the Memorandum, are as follows:

SA Hope: All right. You have the right to, to talk to a Lawyer for advice before I ask you any questions, and to have a Lawyer with you during questioning.

Mr. Efthimiatos: Okay.

SA Hope: All right. Do you understand that?

Mr. Efthimiatos: I do.

SA Hope: Okay. If you cannot afford a Lawyer, one will be appointed for you, before a – any questioning, if you wish.

Mr. Efthimiatos: Okay.

SA Hope: Do you understand?

Mr. Efthimiatos: I do.

SA Hope: Okay. Are you willing to answer any questions?

Mr. Efthimiatos: I, I am willing to answer questions. But I do want an, an Attorney, also.

SA Hope: I – I'm sorry. What do you –

Mr. Efthimiatos: I do want an Attorney, also. But I am very willing to answer to questions.

SA Hope: So do you want an Attorney with you right now, before we start talking?

Mr. Efthimiatos: Is that –

SA Hope: Like, would you like to consult with an Attorney? I mean, we're driving right now, obviously. But –

Mr. Efthimiatos: Right.

Ex. C at 2:12-25; 3:1-2.

## II. Discussion.

### A. Mr. Efthimiatos' Custodial Statements on the Tarmac And In The First Vehicle Should Be Suppressed Because The Investigators' Failed To Inform Him Of His *Miranda* Rights.

In the seminal case of *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court

established that "the prosecution may not use statements . . . stemming from custodial

interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444. "In practice, *Miranda* requires that prior to the initiation of custodial questioning, law enforcement officers must fully apprise the suspect of the government's intention to use his statements to secure a conviction, and must inform him of his rights to remain silent and to have counsel present . . . if he so desires." *United States v. Simmonds*, 641 F. App'x 99, 101 (2d Cir. 2016) (quoting *Moran v. Burbine*, 475 U.S. 412, 420, (1986) (fourth alteration in original) (internal quotations omitted) (citing *Miranda*, 384 U.S. at 468–70); *see also Illinois v. Perkins*, 496 U.S. 292, 296 (1990)). "The determination of whether a person is in custody for *Miranda* purposes is an 'objective inquiry' made after examining 'all of the circumstances surrounding the interrogation.'" *Id.* (quoting *J.D.B. v. North Carolina*, 564 U.S. 261 (2011) (quoting *Stansbury v. California*, 511 U.S. 318, 322 (1994)). "Those circumstances include, inter alia:

> the interrogation's duration; its location (e.g., at the suspect's home, in public, in a police station ...); whether the suspect volunteered for the interview; whether the officers used restraints; whether weapons were present and especially whether they were drawn; whether officers told the suspect he was free to leave or under suspicion ... ; and the nature of the questions asked.

*Id.* (quoting *United States v. FNU LNU*, 653 F.3d 144, 153 (2d Cir.2011). "We begin by asking 'whether a reasonable person would have thought he was free to leave the police encounter at issue . . . . if the answer is no, the 'court must [then] ask whether, in addition to not feeling free to leave, a reasonable person would have understood his freedom of action to have been curtailed to a degree associated with formal arrest." *Id.* at 101-02 (quoting *United States v. Newton*, 369 F.3d 659, 672 (2d Cir.2004). If the answer to this second question is "yes", then the person is deemed to have been held in "custody". *Id.* at 102; *Newton* 369 F.3d at 672; *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984).

4

In the instant case, during the early hours of the morning, at an otherwise vacant airport, Mr. Efthimiatos was approached by three federal agents who informed Mr. Efthimiatos that they were conducting a "ramp check," which is an aviation term of art for surveillance by the Federal Aviation Administration ("FAA") of an airman for purposes of reviewing that pilot's safety and regulatory compliance. After a prolonged period of questioning on the airport's tarmac, to such an extent that Mr. Efthimiatos began to feel ill and needed to sit, the three investigators then pressed Mr. Efthimiatos to continue the questioning in the one of the investigator's vehicles. At that point the four men huddled into the car, seating in such an arrangement where Mr. Efthimiatos had one federal agent sitting to his side, and two sitting in front of him, and the questioning continued. In this even more government-dominated environment the questioning continued. During this interrogation the agents employed coercive tactics to elicit the answers they were seeking, going so far as insinuating that Mr. Efthimiatos is a terrorist. Mr. Efthimiatos was allowed to leave the car but this exit was nothing more than a pretense initiated by SA Hope so that the investigators could gain access to and search the plane and Mr. Efthimiatos' luggage. The investigators had no intent of allowing Mr. Efthimiatos to leave that morning. Had Mr. Efthimiatos begun to walk away from the agents on the tarmac or moved to exit the DEA vehicle, he would have undoubtedly been prevented from departing. A reasonable person, faced with a similar situation, would not have felt free to exit the government encounter, answering the first question in the affirmative.

The second inquiry is whether a reasonable person would have understood his freedom of action to have been curtailed to a degree associated with formal arrest. Next to handcuffs, being surrounded by three government law enforcement agents at night with no other persons present and then being confined in the backseat of a government vehicle is probably the most

5

recognizable indicia of a formal arrest. Absent an arrest occurring in or around a government building, the backseat of a government car is where persons are placed for transportation following an arrest, and these environments are specifically designed with these purposes in mind. The transition into the government vehicle was not a safety or precautionary measure by the investigators. This move was a further display of the government's control over Mr. Efthimiatos and the curtailment of his freedoms.

Taken as a whole, Mr. Efthimiatos was in *Miranda* custody when he was interrogated by SA Hope, SA Kadish, and TFA McGarghan. Because none of these agents advised Mr. Efthimiatos of his *Miranda* rights, and because Mr. Efthimiatos did not waive those rights, the statements made during this interrogation must be suppressed.

> **B. Mr. Efthimiatos' Custodial Statements While In SA Hope's Vehicle Should Be Suppressed Because The Investigators' Failed To Honor Defendant's Request For Counsel.**

In *Edwards v. Arizona*, 451 U.S. 477 (1981), the Supreme Court emphasized that "the assertion of the right to counsel [is] a significant event and that once exercised by the accused, 'the interrogation must cease until an attorney is present.'" *Edwards* 451 U.S. at 485 (quoting *Miranda* 384 U.S. at 474); *see also Wood v. Ercole*, 644 F.3d 83, 90 (2d Cir. 2011) ("Binding precedent is clear: once a suspect requests counsel, all interrogation must stop until an attorney is provided or the suspects reinitiates conversation."). To cut off questioning after being advised of one's rights, "a 'suspect must unambiguously request counsel,'" which requires the suspect to 'articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.'" *United States v. Hercules*, No. 5:13-CR-54-4, 2014 WL 1598015, at *9 (D. Vt. Apr. 17, 2014) (quoting *Davis v. United States*, 512 U.S. 452, 459 (1994)). "Invocation of the *Miranda* right to counsel

6

'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *Davis* 512 U.S. at 459 (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 178, (1991)); *see also Diaz v. Senkowski*, 76 F.3d 61, 64-65 (2d Cir. 1996). While there is no explicit rule mandating that the government ask clarifying questions, it understood to be "good police practice for the interviewing officers to clarify whether or not a defendant actually want[ed] an attorney" if presented with an ambiguous invocation. *Hercules*, No. 5:13-CR-54-4, 2014 WL 1598015, at *10 (quoting *Davis*, 512 U.S. at 462).

Here, Mr. Efthimiatos unequivocally requested to speak with an attorney. He *twice* stated "I do want an attorney." Under the guise of clarifying—which was unnecessary given the clarity of the invocations by Mr. Efthimiatos—SA Hope asked Mr. Efthimiatos, "Like, would you like to consult with an attorney? I mean, we're driving right now, obviously. But --." Mr. Efthimiatos responded, "Right."[1] Mr. Efthimiatos did not say "perhaps" or "maybe." He *twice* said "I do want an attorney," and then confirmed this decision without vacillation by using the simple assertion of "right. *See Ercole*, 644 F.3d at 91 ("[W]e refuse to require criminal defendants to 'speak with the discrimination of an Oxford don,' in order to invoke their right to counsel.") (citing *Davis*, 512 U.S. at 476). This was not a wavering question such as the statement at issue in *Diaz*, "Do you think I need a lawyer?" Nor was this even a statement to the effect of "I think I should get a lawyer," which the Second Circuit in *Ercole* confirmed as an invocation of the *Miranda* right to counsel. Mr. Efthimiatos repeatedly stated, "I do want an attorney," followed by a concise affirmation of his invocation of his *Miranda* right to have counsel present during the custodial interrogation.

---

[1] The informal use of the expression "right," such as used here by Mr. Efthimiatos in response to SA Hope's question, is generally understood to mean "correct," "true," or "one's agreement with a prior statement," that prior statement being, in effect, "would you like to consult with an attorney?"

7

**III.     Conclusion.**

For the foregoing reasons, Mr. Efthimiatos respectfully requests that the Court exclude at trial evidence of his statements to agents on April 10, 2018.

Dated at Burlington, Vermont, this 21st day of November, 2018.

**ANGELO PETER EFTHIMIATOS**

By:     */s/ Craig S. Nolan*
Craig S. Nolan, Esq.
SHEEHEY FURLONG & BEHM P.C.
30 Main Street, 6th Floor
P.O. Box 66
Burlington, VT 05402-0066
(802) 864-9891
cnolan@sheeheyvt.com

**CERTIFICATE OF SERVICE**

I, Craig S. Nolan, counsel for Angelo Peter Efthimiatos, do hereby certify that on November 21, 2018, I electronically filed with the Clerk of Court the following document:

**MOTION *IN LIMINE* TO EXCLUDE STATEMENTS
OBTAINED IN VIOLATION OF *MIRANDA* AND REQUEST FOR HEARING**

using the CM/ECF system.  The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to the following NEF parties:

    AUSA Eugenia A. Cowles, Esq.
    AUSA Nicole P. Cate, Esq.
    U.S. Attorney's Office
    11 Elmwood Avenue
    P.O. Box 570
    Burlington, VT  05403
    eugenia.cowles@usdoj.gov
    nicole.cate@usdoj.gov

Dated at Burlington, Vermont this 21st day of November, 2018.

                By:    */s/ Craig S. Nolan*
                        Craig S. Nolan, Esq.
                        SHEEHEY FURLONG & BEHM P.C.
                        30 Main Street, 6th Floor
                        P.O. Box 66
                        Burlington, VT  05402-0066
                        (802) 864-9891
                        cnolan@sheeheyvt.com